[Cite as *Burr v. Ohio State Hwy. Patrol*, 2011-Ohio-7007.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALEJANDRO ALVARO BURR

    Plaintiff

    v.

OHIO STATE HIGHWAY PATROL

    Defendant
    Case No. 2009-04688

Judge Clark B. Weaver Sr.

DECISION

{¶1} Plaintiff brought this action alleging negligence and negligent training and supervision. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} Plaintiff, a resident of Alfred, New York, testified that on July 10, 2008, he heard voices in his head telling him to go to California; however, plaintiff also admitted that he did not tell anyone that he was hearing voices. Plaintiff testified that one of the reasons he left New York to go to California was because he was upset that the police told him to stay away from a girl. The night before he left for California, plaintiff stayed at a friend's house, and he testified that he did not tell his friend that he was hearing voices. After beginning his journey to California, plaintiff called his bank to put a line of credit on his debit card and stopped in Hornell, New York to visit a friend. Plaintiff testified that he did not tell his friend that he needed help or that he was hearing voices. Plaintiff testified that he was also stopped for speeding near Cleveland, Ohio, but was not cited, and he did not tell the officer that he was hearing voices.

{¶3} In the early morning hours of July 11, 2008, plaintiff decided to return to New York. As he was driving along State Route 11 (SR 11) in eastern Ohio around 2:00 a.m., plaintiff testified that a voice in his head told him to let go of the steering wheel and pray, and when he did so his vehicle crashed into the right guardrail, causing significant damage to his vehicle. Plaintiff admitted that at the time of his crash, he had been awake for nearly a day and a half with only a couple of hours of sleep. Sergeant Ronald Bornino of the Ohio State Highway Patrol responded to the accident scene and plaintiff told Bornino that he was not injured. Plaintiff testified that he told Bornino that he was Jesus Christ and that Bornino "smirked" at his statement. Plaintiff testified that Bornino took him to a truck stop and specifically told him not to walk on Interstate 90 (I-90). Plaintiff stated that he could not find any truck drivers to drive him from the truck stop back to New York; that he understood Bornino when he told plaintiff not to walk on I-90; and that he decided to walk on I-90 hoping that Bornino would find him. While walking along the berm of I-90, plaintiff was struck by a semi truck and sustained injuries.

{¶4} Bornino, an employee of defendant since 1997, testified that when he arrived at the accident scene, he assumed that the driver of the vehicle had fallen asleep because there was no evidence of braking. He stated that when he asked plaintiff what happened, plaintiff responded that he purposely let go of the steering wheel to pray to God; however, Bornino stated that he did not recall plaintiff stating that he was Jesus Christ. In the witness statement contained in the Traffic Crash Report, Bornino asked plaintiff if he intentionally wrecked his car and he said that "I let go of the wheel either to pray or wreck." Further, he said that he let go of the steering wheel because he "had to answer [God]." (Joint Exhibit 1.) On the Traffic Crash Report, Bornino marked "operating vehicle in erratic, reckless, careless, negligent or aggressive manner" as the contributing circumstance to the crash. (Joint Exhibit 1.) Bornino testified that he chose this option based upon the fact that plaintiff stated that he purposely let go of the steering wheel while driving on SR 11 and that plaintiff did not tell him that he had fallen asleep. Further, Bornino noted plaintiff's condition as "emotional" on the Traffic Crash Report. (Joint Exhibit 1.) Bornino testified that in investigating hundreds of crashes, he has never seen facts as presented in this case.

{¶5} Bornino stated that he asked plaintiff if he was injured, and plaintiff responded that he was not injured. Further, when he questioned plaintiff about getting help, Bornino testified that plaintiff was evasive in his answers; that he was reluctant to give any information about his family; and that plaintiff did not want to ride in the tow truck with his damaged vehicle. Bornino testified that he dropped plaintiff off at Travel America, a truck plaza; that he told plaintiff he could use a pay phone at the truck stop; and that he might find a truck driver who could drive him back to New York. He also told plaintiff not to walk on I-90 as a pedestrian. Further, Bornino stated that he had previously left other persons at the truck plaza, which was a safe location, and that no one had previously walked away from the truck plaza onto I-90. Bornino stated that he did not provide any more assistance for plaintiff inasmuch as he found plaintiff to be uninjured.

{¶6} Plaintiff alleges that defendant had a duty to protect him, that defendant failed to use reasonable care to ensure his safety, and that defendant's negligence proximately caused his injuries. Plaintiff further alleges negligent training and supervision on the part of defendant. Defendant denies liability, asserts that plaintiff's own negligence was the proximate cause of his injuries, and argues that the public duty rule contained in R.C. 2743.02(A)(3) applies.

{¶7} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶8, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶8} R.C. 2743.02(A)(3)(a) states: "Except as provided in division (A)(3)(b) of this section, the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state."

{¶9} R.C. 2743.01(E)(1) states: "'Public duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following:

{¶10} "(a) Permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, *law enforcement, or emergency response activity*;

{¶11} "(b) Supervising, rehabilitating, or liquidating corporations or other business entities." (Emphasis added.)

{¶12} Defendant performed a public duty when it responded to plaintiff's car crash on SR 11 as it was law enforcement responding to an emergency situation. Therefore, the state is immune from liability for its actions involving its response to plaintiff's crash, unless a special relationship can be established. In order for a special relationship to exist between the state and an injured party, pursuant to R.C. 2743.02(A)(3)(b) all of the following must exist:

{¶13} "(i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

{¶14} "(ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;

{¶15} "(iii) Some form of direct contact between the state's agents and the injured party;

{¶16} "(iv) The injured party's justifiable reliance on the state's affirmative undertaking."

{¶17} The court finds that there was a special relationship between plaintiff and defendant. Defendant had direct contact with plaintiff, defendant's employee drove plaintiff to the truck stop because plaintiff could not be left on the side of the road without a vehicle, and plaintiff relied on defendant taking him to the truck stop. Therefore, it must be determined whether defendant breached the duty it owed to plaintiff.

{¶18} "The general rule is that there is no duty of affirmative action absent a special relation which gives rise to a duty to aid or protect another person. A law enforcement officer having *custody* of a person stands in a special relation to that

person and owes that person a duty of reasonable care and protection." *Hartman v. State Hwy. Patrol* (Dec. 19, 1991), Franklin App. No. 91AP-721. (Emphasis added.) "However, as the Restatement of Law 2d, Torts, Section 314A makes clear, the custodial officer is not obligated to act until he knows or should know that the person is mentally deficient. Therefore, the OSHP cannot be held liable to have known what it could not possibly have known." Id.

**{¶19}** Bornino testified that he knew that he could take a person into custody if the person was a threat to himself or others. Bornino asked plaintiff if he was injured and plaintiff responded that he was not hurt. Further, plaintiff refused to ride in the tow truck with his damaged vehicle. In such a situation, Bornino took plaintiff to the truck stop, as he had done in the past, and suggested to plaintiff that he may be able to use a telephone or find a truck driver to drive him back to New York. Bornino further stated that he did not think plaintiff was a risk based upon the fact that plaintiff stated that he was praying and purposely crashed his vehicle. Instead, Bornino testified that he did not find credibility in plaintiff's statements inasmuch as he believed that plaintiff was attempting to avoid a traffic citation.

**{¶20}** Defendant also presented the testimony of Timothy Longo, the current Chief of Police for Charlottesville, Virginia, and a police officer of 30 years. Longo testified that he is certified in crisis intervention and that he trains police officers about persons who may have mental illness or distress. In preparing for his testimony, he reviewed the depositions of plaintiff and Bornino, the traffic accident report, and defendant's policy manual. Longo testified that based upon defendant's policy for dealing with the mentally ill (Joint Exhibit 2), an officer has discretion in determining whether a person is mentally ill. The officer can take the person into custody involuntarily if he believes that the person is a threat to himself or others. Further, Longo stated that the officer can assess the credibility of the person and can discount his statements if the officer does not believe the statements. Longo opined that an officer is in compliance with the policy if a person makes irrational statements but the officer does not believe the statements, as this decision is within the officer's discretion.

{¶21} Bornino stated that he did not believe plaintiff when plaintiff told him that he was praying to God when he crashed and had intentionally let go of the steering wheel. Bornino testified that he believed that plaintiff was purposefully evasive in the answers to his questions because plaintiff was trying to avoid a citation. Bornino admitted that plaintiff was emotional. However, the court finds that Bornino did not find plaintiff to be mentally impaired inasmuch as he believed that plaintiff purposely avoided answering his questions. As Longo testified, it is within an officer's discretion to discount statements if the officer does not find the statements to be truthful. Therefore, the court finds that defendant did not breach the duty it owed to plaintiff. Bornino, based upon his observations of plaintiff, determined that plaintiff purposely evaded his questions in hopes of avoiding a citation. Further, Bornino took plaintiff to a safe location, the truck stop, where he had taken people in the past. The court finds that plaintiff did not meet his burden by the preponderance of the evidence to show that defendant knew or should have known that plaintiff was mentally deficient.

{¶22} Finally, the court finds that the sole proximate cause of plaintiff's injuries was plaintiff's decision to leave the safety of the truck stop and walk on I-90. Plaintiff testified that Bornino told him not to walk on I-90 and that he understood Bornino's instructions. The court finds that plaintiff failed to exercise due care for his safety and that his own actions of leaving the truck stop and walking as a pedestrian on I-90 were the direct and proximate cause of his injuries.

{¶23} In order to prove a claim of negligent training and supervision, plaintiff must show: 1) the existence of an employment relationship; 2) that defendant's employees were incompetent; 3) that defendant had actual or constructive knowledge of their incompetence; 4) that the employees' actions or omissions caused plaintiff's injuries; and 5) that defendant's negligence in hiring or retaining such employees was a proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739.

{¶24} Inasmuch as the court finds that plaintiff failed to prove that defendant's employees were incompetent or that defendant had actual or constructive knowledge of

their incompetence, plaintiff cannot prevail on his claim of negligent training and supervision.

{¶25} For the foregoing reasons, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ALEJANDRO ALVARO BURR

    Plaintiff

    v.

OHIO STATE HIGHWAY PATROL

    Defendant

Case No. 2009-04688

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶26} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____

CLARK B. WEAVER SR.
Judge

cc:

James P. Dinsmore          Ron M. Graham
Peter E. DeMarco          6988 Spinach Drive
Assistant Attorneys General    Mentor, Ohio 44060
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Filed December 5, 2011

To S.C. reporter March 5, 2012